[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
INTRODUCTION
The summons and complaint in this action to foreclose a mortgage name a number of defendants. The plaintiff has defaulted, or withdrawn as to, all of them except Alan Senie (the "defendant"), who is the owner of the equity of redemption.
The plaintiff has alleged that the defendant executed a mortgage note (the "note") in favor Charter Federal Savings and Loan Association ("Charter I"), as well as a mortgage deed (the "mortgage"), which secured the note, also in favor of Charter I. The plaintiff also alleges that, by virtue of two assignments of the note and mortgage, the plaintiff is now the owner and holder of the note and mortgage. The defendant admits his execution of the note and mortgage, but claims the plaintiff has failed to establish that it is the owner and holder of them.
ISSUE
Section 49-10(a) of the General Statutes provides, in relevant part: CT Page 4801
 Whenever any debt or other obligation secured by mortgage, assignment of rent or assignment of interest in a lease, is assigned by an instrument in writing containing a sufficient description to identify the mortgage, assignment of rent or assignment of interest in a lease, as security for the debt or obligation, and that assignment has been executed, attested and acknowledged in the manner prescribed by law for the execution, attestation and acknowledgement of deeds of land, the title held by virtue of the mortgage, assignment of rent or assignment of interest in a lease shall vest in the assignee.
The disposition of this case depends on whether there has been compliance with Section 49-10(a) by those in plaintiff's chain of title to the note and mortgage and, if there has not been such compliance, how that section is to be applied to this case.
PLEADINGS
As noted above, the execution of the note and mortgage by the defendant have been alleged and admitted. The complaint also alleges the following matters, which have not been admitted:
 Charter I was placed in receivership by the U.S. Department of the Treasury, office of Thrift Supervision ("OTS"), and OTS appointed Resolution Trust Company ("RTC") as receiver of Charter I;
 Thereafter, RTC, as receiver of Charter I, assigned the note and mortgage to Asset Recovery and Management Inc. ("ARM");
 Thereafter, ARM assigned the note and mortgage to the plaintiff.
FACTS
The plaintiff has requested that the court take judicial notice of a notice published by OTS in the Federal Register, as follows: CT Page 4802
 "Notice is hereby given that, pursuant to the authority contained in section 5(d)(2)(C) of the Home Owners' Loan Act of 1933, as amended by section 301 of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, the Office of Thrift Supervision has duly appointed the Resolution Trust Corporation as sole Receiver for Charter Federal Savings and Loan Association, Stamford, Connecticut ("Association"), on June 29, 1990." (The "First Notice.").
In response to the plaintiff's request, the court takes judicial notice of the First Notice, and finds that on June 29, 1990, OTS appointed RTC as sole receiver for Charter I.
The plaintiff has also requested that the court take judicial notice of two other notices published by OTS in the Federal Register, as follows:
 "Notice is hereby given that, pursuant to the authority contained in section 5(d)(2)(B) and (H) of the Home Owners' Loan Act of 1933, as amended by section 301 of the Financial Institutions Reform, Recovery and Enforcement Act of 1989, the Office of Thrift Supervision has duly appointed the Resolution Trust Corporation as sole Conservator for Charter Federal Savings Association, Stamford, Connecticut ("Association") on June 29, 1990." (The "Second Notice.")
 "Notice is hereby given that, pursuant to the authority contained in subdivision (F) of section 5(d)(2) of the Home Owners' Loan Act, the Office of Thrift Supervision duly replaced the Resolution Trust Corporation as Conservator for Charter Federal Savings Association, Stamford, Connecticut ("Association"), with the Resolution Trust Corporation as sole Receiver for the Association on June 21, 1991." (The "Third Notice.")[1]
CT Page 4803
In response to the plaintiff's request, the Court takes judicial notice of the Second Notice and the Third Notice, and finds that on June 29, 1990, OTS appointed RTC as sole conservator for an entity known as Charter Federal Savings Association ("Charter II"), whose name is similar to, but different from, that of Charter I, and that on June 21, 1991, OTS replaced RTC as sole conservator for Charter II with RTC as sole receiver of Charter II.
The plaintiff introduced a document entitled "Assignment of Mortgage or Beneficial Interest in Deed of Trust" (the "assignment") which was executed on August 23, 1993 in favor of ARM by:
 "Assignor: Resolution Trust Corporation as Receiver for Charter Federal Savings Association, Stamford, Connecticut".
The plaintiff also introduced a document entitled "Allonge" (the "allonge") which, according to the testimony of Mr. Solari, was attached to the note. The allonge is dated August 23, 1993, and it states:
 Pay to the order of Asset Recovery 
Management Corp., a corporation organized under the laws of the state of Wisconsin . . . Resolution Trust Corporation As Receiver for Charter Federal Savings Association, Stamford, Connecticut.
From that evidence the court finds that ARM acquired all of the interests of Charter II, if any, in the note and mortgage.
The plaintiff's senior manager, Robert Solari, testified that ARM assigned the note and mortgage to the plaintiff, and an assignment of the mortgage, as well as an allonge relating to the note, both of which ran from ARM to the plaintiff, were introduced as exhibits. From that evidence the court finds that ARM conveyed to the plaintiff all of its interests, if any, in the note and mortgage.
DISCUSSION
Section 49-10 provides that when a mortgage is assigned by a writing executed with the dignities required of deeds, title to the mortgage shall "vest" in the assignee. That section does not CT Page 4804 expressly state that its provisions constitute the exclusive manner for transferring title to a mortgage, but two Superior Court decisions have so said. ". . . an assignee of a mortgage deed cannot proceed with a foreclosure without complying with Section 49-10
C.G.S." People's Bank v. Linder, 1993 Ct. Sup. 1912. "Here (in Connecticut) an assignment (of a mortgage) must be executed, attested and acknowledged in the manner prescribed by law for the execution, attestation and acknowledgement of deeds of land before title vests in the assignee. . . . General Statutes, Sec. 49-10"Uptown Federal Savings and Loan v. Define,8 Conn. L. Rptr. 355, 356, 1993 Ct. Sup. 1528.
In the context of Section 49-10, the plaintiff has established that the defendant executed the note and mortgage in favor of Charter I, that RTC was appointed receiver of Charter I, that RTC assigned the note and mortgage to ARM in its capacity as receiver of Charter II and that ARM assigned the note and mortgage to the plaintiff. Quaere: how did the note and mortgage get from Charter I to Charter II.
Plaintiff's reply brief addresses this issue as follows:
 When the RTC is appointed as receiver, concurrent with the acquisition of the failed institution, they organize a "successor corporation". Such successor corporation is a new Federal savings association with a similar but slightly different name. In this situation, the RTC was appointed receiver of "Charter Federal Savings and Loan Association"; concurrent with the receivership the RTC established "Charter Federal Savings Association" to take over the assets and liabilities of the failed institution and function as the conservator. It was this successor corporation that was later liquidated by the RTC.
While plaintiff's reply brief may accurately recite the relationship between Charter I and Charter II, a brief of a party is not a substitute for evidence. Because no evidence, whatsoever, was introduced to establish how the note and mortgage went from Charter I to Charter II, it is found that the requirements of Section 49-10 have not been met.
This issue is discussed in D. Caron, Connecticut Foreclosures, CT Page 4805 1993 Sup., § 4.02A, entitled "Assignee as Plaintiff", which quotes Standard 28.5(a) of the Connecticut Standards of Title, and Comment 2 to Standard 28.5(a), respectively, as follows:
Standard 28.5(a)
 (a) Title to real property described in a mortgage held by a financial institution at the time it was declared or adjudicated to be insolvent, which mortgage was foreclosed by a party claiming to be the owner of that mortgage through or under the receiver of the failed institution, shall not be deemed to be marketable unless such mortgage was assigned of record by the receiver and by every subsequent assignee of the mortgage down to the foreclosing party. As an alternative to an assignment by the receiver to a foreclosing party, a finding by the court in the foreclosure action that the plaintiff has good title to the mortgage will suffice to establish such title, providing the receiver was named a defendant in that action.
Comment
 The Standards of Title Committee is of the opinion that the same fundamental precepts of jurisdiction and due process also pertain in a foreclosure action in which the plaintiff seeks to establish its interest and title to a mortgage as to which it holds no interest of record. If the plaintiff claims to be the owner of the mortgage by some transfer from the receiver which does not meet the requirements of a valid conveyance and which is not recorded, then the plaintiff must allege such ownership in the complaint and join the alleged transferor (the receiver) to give the receiver an opportunity to respond to such allegations.
In short, even if the plaintiff had established an unrecorded assignment of the mortgage from Charter I to Charter II, it would not acquire marketable title through this foreclosure unless it had CT Page 4806 made the receiver of Charter I a party to this action, so that the receiver would have been afforded the opportunity to contest the allegation of an unrecorded assignment made by it.
As previously noted, although the complaint alleges that RTC, as receiver of Charter I, assigned the note and mortgage to ARM, the evidence established that the note and mortgage were assigned to ARM by RTC as receiver of Charter II. The plaintiff has not requested permission to conform the pleadings to its proof. Even had such a request been made and granted, the plaintiff would still be stymied by its failure to offer evidence of a transfer of the note and mortgage from Charter I to Charter II.
The issue in this case is clearly distinguishable from the issue of misnomer discussed in Seaboard Commercial Corporation v.Leventhal, 120 Conn. 52 (1935), and Wyandot, Inc. v. Gracey StreetPopcorn Co., 208 Conn. 248 (1988). In each of those cases a corporation's name was misstated on a document, and the misstatement was held to be insignificant because it could not create confusion in regard to another similarly named corporation. However, in this case there is no claim that either Charter I or Charter II is misdescribed in any relevant document, and there in fact exist two entities with similar names which is the nub of the problem.
CONCLUSION
Because of the lack of evidence to establish the plaintiff's chain of title to the note and mortgage, judgment is entered in favor of the defendant.
George Levine, Judge